UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DERRICK LAMAR MCKNIGHT, | Case No. 3:17-cv-00681-MMD-CLB |
| Petitioner, | ORDER |
| v. | |
| WARDEN BAKER, *et al.*, | |
| Respondents. | |

**I.    SUMMARY**

In his amended 28 U.S.C. § 2254 habeas corpus petition Derrick Lamar McKnight challenges his Clark County, Nevada conviction by a jury of charges including robbery and first-degree murder with use of a deadly weapon. (ECF No. 48.) He is serving a term of life without the possibility of parole. (ECF No. 56-18 (Exhibit ("Exh.") 68).) Respondents have filed a Renewed Motion to Dismiss ("Motion"), arguing that the original and amended petition are untimely, that no claims relate back to a timely petition, and that some claims are either procedurally defaulted or unexhausted. (ECF No. 74.)[1] The Court concludes that the original petition is timely and that some claims from the amended petition relate back and are therefore timely. Several claims of ineffective assistance of trial or appellate counsel are unexhausted. McKnight also asks for a stay of this case so that he may return to state court to present his unexhausted ineffective assistance claims. Because McKnight was never granted counsel throughout his state postconviction proceedings, the Court grants a stay and abeyance.

///

///

---

[1]McKnight opposed, and Respondents replied. (ECF Nos. 75, 77.)

## II. BACKGROUND

### A. State-Court Proceedings

McKnight's convictions arose from an incident in which he and Timothy Burnside followed Kenneth Hardwick when he drove out of the Mandalay Bay casino in Las Vegas and robbed and shot Hardwick in a Jack in the Box drive-through, killing him. (*See* ECF No. 55-48 (Exh. 48 at 13-29).) McKnight and Burnside were tried together. The jury found McKnight guilty of burglary (count 1), conspiracy to commit robbery (count 2), robbery with use of a deadly weapon (count 3), and first-degree murder with use of deadly weapon (count 4). (ECF No. 56-7 (Exh. 57).) At the penalty phase, the jury sentenced McKnight to life without the possibility of parole for the murder count.[2] (ECF No. 56-12 (Exh. 62).) Judgment of conviction was entered on August 18, 2010. (ECF No. 56-18 (Exh. 68).)

The Nevada Supreme Court denied McKnight's direct appeal in December 2015. (ECF No. 56-48 (Exh. 98).) The state district court declined to appoint counsel for McKnight's state postconviction petition. The Nevada Supreme Court affirmed the denial of his state postconviction petition in June 2017. (ECF No. 57-17 (Exh. No. 117).) McKnight initiated a *pro se* federal habeas action in November 2017. (ECF No. 1-1.) Next, in August 2018 he filed a second state postconviction petition. (ECF No. 57-12 (Exh. 122).) The state district court dismissed the petition as untimely, successive, and an abuse of the writ, finding that McKnight failed to demonstrate good cause and actual prejudice or a fundamental miscarriage of justice. (ECF No. 57-13 (Exh. 123).) The Nevada Supreme Court affirmed the denial in June 2019. (ECF No. 57-32 (Exh. 132).) The court concluded that the district court did not err in rejecting McKnight's good cause

---

[2]The State originally sought the death penalty against both defendants but withdrew its intent as to McKnight before trial. The jury sentenced Burnside to death. (*See* ECF No. 56-13 (Exh. 63).) The state district court sentenced McKnight as follows: count 1 – 22 to 96 months, count 2 – 13 to 60 months, count 3 – 35 to 156 months, with an equal and consecutive 35 to 156 months for the deadly weapon enhancement, count 4 – life without the possibility of parole, with an equal and consecutive life without the possibility of parole for the deadly weapon enhancement, count 1, 2, 3 to run concurrently and count 4 to run consecutive to counts 1, 2, 3. (ECF No. 56-15 (Exh. 65).)

argument and that he failed to demonstrate actual innocence as a gateway through the procedural bars.

**B.      Federal Habeas Proceedings**

As noted above, in November 2017, McKnight dispatched his *pro se* federal habeas petition for mailing. (ECF No. 1-1.) The Court ultimately appointed counsel under the Criminal Justice Act, and McKnight filed a counseled amended petition. (ECF No. 48.) He alleges 10 grounds for relief:

> Ground 1: Trial counsel rendered ineffective assistance in violation of his Sixth and Fourteenth Amendment rights by:
>
> (a) Failing to identify the constitutional basis for his motion to suppress the improper and suggestive eyewitness identification by Syncerrity Ray.
>
> (b) Failing to consult with an eyewitness identification expert and have the expert testify at the suppression hearing and trial.
>
> (c) Failing to investigate and present a defense theory that this was an afterthought robbery.
>
> (d) Failing to investigate other eyewitnesses and call them to testify at trial.
>
> (e) Failing to allow McKnight to testify in his own defense.
>
> (f) Failing to object to the prosecution's statement during closing argument that the jury did not need to understand or determine the reason Hardwick was targeted.
>
> (g) Failing to object to prosecution becoming an unsworn witness when prosecutor argued that the JIB video showed that McKnight was the lookout for Burnside when there was no video footage of McKnight.
>
> (h) Failing to object, move to strike, and move for mistrial during the penalty phase when Burnside's attorney introduced testimony from a witness who purportedly overheard McKnight and Burnside arguing, with McKnight stating: "I don't fight people, I kill people."
>
> (i) Failing to investigate and introduce mitigation evidence and move to counter or eliminate aggravating evidence such as the

3

>preliminary hearing transcripts from an unrelated murder case that was subsequently dismissed.
>
>(j) Cumulative effect of trial counsel's ineffective assistance.

Ground 2: Appellate counsel was ineffective for failing to argue that the denial of the motion to suppress the improper and suggestive eyewitness identification of Syncerrity Ray violated McKnight's Fifth and Fourteenth Amendment due process rights.

Ground 3: The trial court allowed the prosecution to improperly dismiss three potential jurors of color during voir dire and also allowed the executive director of a white supremacist group to serve on the jury, in violation of McKnight's Fifth and Fourteenth Amendment equal protection rights.

Ground 4: The trial court failed to hold a hearing or make an inquiry into allegations that a juror was sleeping for lengthy periods during the trial in violation of McKnight's due process rights.

Ground 5: The trial court failed to sever McKnight's trial from Burnside's death penalty trial, and Burnside's counsel introduced harmful and prejudicial evidence against McKnight in violation of his Sixth Amendment right to an impartial jury.

Ground 6: The trial court allowed four jury instructions that confused the jury about the standard to prove guilty beyond a reasonable doubt in violation of McKnight's Fifth and Fourteenth Amendment fair trial rights.

Ground 7: The trial court allowed the prosecution to introduce at trial the preliminary transcript from an unrelated murder case against McKnight which was later dismissed.

Ground 8: The State engaged in prosecutorial misconduct in violation of McKnight's fair trial rights when it used information from a pending and unrelated murder as aggravating evidence during the penalty phase and then later dismissed the unrelated case due to identification issues.

Ground 9: The cumulative effect of the errors of the trial court and trial and appellate counsel, and prosecutorial misconduct deprived McKnight of a fair trial.

Ground 10: McKnight is actually innocent, thus his continued incarceration violates the Eighth Amendment's prohibition of cruel and unusual punishment and his due process rights.

4

(ECF No. 48 at 4-9.)

Respondents now move to dismiss the petition, arguing that it is untimely, several grounds do not relate back to a timely petition and/or are unexhausted, and one ground is procedurally defaulted. (ECF No. 74.)

**III.    DISCUSSION**

**A.  McKnight's Federal Petition is Timely**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year statute of limitations on the filing of federal habeas corpus petitions. *See* 28 U.S.C. § 2244(d). The one-year time limitation can run from the date on which a petitioner's judgment became final by conclusion of direct review, or the expiration of the time for seeking direct review. *See* 28 U.S.C. § 2244(d)(1)(A). Where a defendant fails to seek a writ of certiorari from the United States Supreme Court, AEDPA's one-year limitations period begins to run on the date the 90-day period expires. Supreme Court Rule 13.

Here, McKnight timely appealed, and the Nevada Supreme Court affirmed his convictions on December 18, 2015. (ECF No. 56-48 (Exh. 98).) He did not file a petition for a writ of certiorari, so the AEDPA limitations period began to run on March 18, 2016. *See Patterson v. Stewart*, 251 F.3d 1243, 1247 (9th Cir. 2001).

McKnight timely filed a state postconviction habeas corpus petition on September 2, 2016. (Exh. 102.) The state district court denied the petition because it failed to raise a single claim and was "devoid of any content or any argument in support of relief." (ECF No. 57-5 at 3 (Exh. 105).) At the close of his petition, McKnight had asked for counsel because he was indigent, did not understand the law, and required appointed counsel to help him file a supplemental petition. The court found that because McKnight failed to raise a single issue, he failed to present any issue of particular difficulty that would warrant appointment of counsel. (*Id.*)

McKnight argued on appeal that the district court abused its discretion in denying his petition without appointing counsel. (ECF No. 57-10 (Exh. 110).) The Nevada Supreme Court acknowledged his lengthy sentences, but affirmed the district court,

holding that McKnight failed to identify any issues in his state petition, and therefore failed to show that his case presented difficult issues or that he needed counsel to conduct discovery. (ECF No. 57-17 at 3 (Exh. 117).) The appellate court also concluded that McKnight's bare assertion of ignorance of the law did not demonstrate an inability to comprehend the proceedings compelling appointment of counsel. (*Id.*)

A properly filed petition for state postconviction relief can toll the period of limitations. *See* 28 U.S.C. § 2244(d)(2). A state petition is "properly filed" "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). The governing laws and rules "usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Id.*[3] The United States Supreme Court in *Artuz* also distinguished whether an application has been "properly filed" from whether the claims contained in the application have merit and are not procedurally barred. *Id.* at 9; *see also Pace*, 544 U.S. at 412-16.

Here, McKnight timely filed his first state petition in September 2016. (ECF No. 57-2 (Exh. 102).) He filed the petition *pro se*, on the court's form. McKnight has now filed a declaration with this Court stating that he called his appellate counsel after his convictions were affirmed and asked what he could do next. (ECF No. 76-1 (Pet. Exh. 204).) Appellate counsel sent him the form state habeas petition; counsel had typed in several sections and had placed pink tabs where McKnight was supposed to fill information in and sign. (*See* ECF No. 57-2 (Exh. 102).) Under paragraph 23, where it directs petitioner to state concisely every ground and briefly summarize supporting facts, counsel had typed: "I AM INDIGENT AND DO NOT UNDERSTAND THE LAW AND NEED COUNSEL APPOINTED TO HELP ME COMPLETE THIS PETITION AND TO FILE A

---

[3]For example, when a postconviction petition is untimely under state law, 'that [is] the end of the matter' for the purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005). Under Nevada state law, a habeas petition must be filed within one year after entry of the judgment of conviction if no appeal is taken, or, if an appeal is taken, within one year after appellate court issues remittitur. *See* NRS § 34.726(1).

1 SUPPLEMENTAL PETITION." *Id.* at 6. The Clerk of Court accepted the petition and filed it on September 2, 2016. *See id.*

Respondents briefly argue that because McKnight's petition did not present any habeas claims it is not "properly filed" for the purposes of tolling the AEDPA limitations period. (ECF No. 74 at 8.) But they only cite *Pace*, which held that a petition that was untimely under state law was not "properly filed" and did not toll the federal statute of limitations. *Artuz*, however, described "properly filed" as whether the petition was delivered and accepted in compliance with applicable state laws and rules governing filing. 531 U.S at 8-9. *Artuz* also differentiated between what might be viewed as the more clerical requirements—a document on the proper form, timely filed in the correct court, with the correct filing fee—from whether the document set forth meritorious claims that weren't procedurally defaulted. It appears that "properly filed" under § 2244(d)(2) turns on complying with these more technical filing requirements, rather than an examination of the claims themselves. This Court finds that McKnight's first state petition was "properly filed," and therefore, the one-year federal statute of limitations was tolled while that petition was pending. The parties do not dispute that if McKnight's first state petition was timely, his federal habeas action was timely commenced.

**B. Relation Back**

Next, Respondents argue that several claims in McKnight's amended petition do not relate back to a timely-filed petition. (ECF No. 74 at 9-14.)[4] A new claim in an amended petition that is filed after the expiration of the AEDPA one-year limitation period will be timely only if the new claim relates back to a claim in a timely-filed pleading under Rule 15(c) of the Federal Rules of Civil Procedure, on the basis that the claim arises out of "the

---

[4]The Court rejects Respondents' disingenuous argument that McKnight failed to properly incorporate the claims from his direct appeal in his original petition. McKnight explicitly incorporated the claims in the direct appeal, which he included with his petition. (*See* ECF No. 6.) He clearly stated, for example, "see attached ground one," for each claim that was fully set forth in his attached appellate brief. (*See, e.g.*, *id.* at 3, 32-35.)

same conduct, transaction or occurrence" as a claim in the timely pleading.[5] *Mayle v. Felix*, 545 U.S. 644 (2005). In *Mayle*, the United States Supreme Court held that habeas claims in an amended petition do not arise out of "the same conduct, transaction or occurrence" as claims in the original petition merely because the claims all challenge the same trial, conviction or sentence. 545 U.S. at 655-64. Rather, under the construction of the rule approved in *Mayle*, Rule 15(c) permits relation back of habeas claims asserted in an amended petition "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." 545 U.S. at 657. In this regard, the reviewing court looks to "the existence of a common 'core of operative facts' uniting the original and newly asserted claims." A claim that merely adds "a new legal theory tied to the same operative facts as those initially alleged" will relate back and be timely. 545 U.S. at 659, 659 n.5; *see also Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013).

### a. Grounds 1(a), 1(i), 1(j), 2, 8 and 9 relate back

McKnight contends in ground 1(a) that trial counsel failed to identify the constitutional basis for his motion to suppress the improper and suggestive eyewitness identification by Syncerrity Ray. (ECF No. 48 at 4-5.) In ground 2 McKnight argues that appellate counsel failed to identify the constitutional basis for the trial court's error in denying the motion to suppress the eyewitness identification by Ray. (*Id.* at 7.)

In his original petition, McKnight argued that the trial court erred when it denied the motion to suppress the improper and suggestive eyewitness identification. (ECF No. 6 at 32-35.) The two claims in the amended petition turn on the legal theory of ineffective assistance of counsel, but the Court concludes that the claims arise from the same core facts, namely, the litigation and adjudication of the motion to suppress the witness

---

[5]The parties do not dispute that the claims in the amended petition must relate back to the original petition to be timely. (*See* ECF Nos. 74, 75.)

identification. S*ee Nguyen*, 736 F.3d at 1287.[6] Grounds 1(a) and 2 relate back and are therefore timely.

McKnight next contends in ground 1(i) that trial counsel failed to investigate and introduce mitigation evidence and move to counter or eliminate aggravating evidence such as the preliminary hearing transcripts from an unrelated murder case that was subsequently dismissed. (ECF No. 48 at 6.) In ground 8 McKnight contends that the State engaged in prosecutorial misconduct by using information from a pending and unrelated murder case as aggravating evidence during the penalty phrase. The State later dismissed that case due to identification issues. (ECF No. 48 at 8.)

In McKnight's original petition, he claimed that the trial court improperly admitted at sentencing the preliminary hearing transcript related to a separate pending murder prosecution against him. Similar to the issue of the motion to suppress, here the Court concludes that, while the amended claims are for ineffective assistance of counsel and prosecutorial misconduct, the claims arise from the same core set of facts—the introduction of the hearing transcript at sentencing. The Court holds that grounds 1(i) and 8 relate back and are timely.

In ground 1(j) McKnight asserts that trial counsel's cumulative violations render his convictions void and in ground 9 he argues that the cumulative and prejudicial errors of the state district court, trial and appellate counsel, and prosecutorial misconduct entitle him to habeas relief. (ECF No. 48 at 6, 8-9.) McKnight argued in his original petition that

---

[6]Respondents argue that *Nguyen* conflicts with the Ninth Circuit's earlier decision in *Schneider v. McDaniel*, 674 F.3d 1144 (9th Cir. 2012). In *Schneider*, the appeals court held that the relation back doctrine did not apply where the original theory was based on trial counsel's alleged failures and the amended theory was based on the trial court's alleged errors. *See id.* at 1151. Respondents contend that *Schneider* controls because when a subsequent three judge panel opinion conflicts with the opinion of an earlier three judge panel the earlier decision controls. (ECF No. 77 at 11 (citing *Avagyan v. Holder*, 646 F.3d 672, 677 (9th Cir. 2011); *Antonio v. Ward's Cove Packing Company, Inc.*, 810 F.2d 1477, 1478-79 (9th Cir. 1987)).) *Nguyen* makes no mention of the *Schneider* decision. The Court acknowledges this potential tension but remains persuaded that McKnight's claims of ineffective assistance of counsel in grounds 1(a) and 1(i) (discussed next) sufficiently relate back to the underlying substantive claims of trial court error.

the cumulative effect of errors during trial severely prejudiced him. (ECF No. 6 at 63.) Grounds 1(j) and 9 also relate back and are therefore timely.

### b. Ground 3 relates back in part

McKnight claims that the trial court violated his equal protection rights by allowing the prosecution to discriminate against three jurors of color. (ECF No. 48 at 7.) He further argues that the court improperly curtailed the defense from inquiring into a juror's racial bias. The court also disagreed with the defense that the juror, who stated that he was part of a group that may be viewed as racist, was biased. In his original petition, McKnight argued that the trial court violated his Fifth and Fourteenth Amendment rights when it denied the defense's *Batson*[7] challenge as to those three jurors of color. (ECF No. 6 at 35-39.) This part of ground 3 in the amended petition clearly relates back. However, the claim that the trial court did not permit the defense to further inquire into a fourth juror's potential racial bias involves separate facts and differs in time and type from the *Batson* challenges raised in both the original and amended petition. The *Batson* challenge part of ground 3 relates back and is timely. The claim about another juror's potential racial bias does not relate back; the Court dismisses that portion of ground 3 as untimely.

### c. Grounds 5 and 10 are dismissed as untimely

McKnight argues in ground 5 that the trial court violated his Sixth Amendment right to an impartial jury by failing to sever his trial from Burnside's death penalty trial because "Burnside's trial attorney introduce[d] harmful prejudicial evidence against [McKnight]." (ECF No. 48 at 8.) In his original petition, McKnight claimed that the trial court violated his Sixth and Fourteenth Amendment rights to a fair and impartial jury because he had a death-qualified jury when he should have been able to impanel a separate, non-death qualified jury.[8] (ECF No. 6 at 40-42.) These claims do not share a common core of

---

[7]*Batson v. Kentucky*, 476 U.S. 79 (1986).

[8]McKnight cites to the dissent in *Buchanan v. Kentucky*, which stated that "the evidence is overwhelming that death qualified juries are substantially more likely to convict on more serious charges than juries on which unaltered opponents on capital punishment are permitted to serve." 483 U.S. 402, 407 (1987).

operative facts. McKnight originally alleged that he was denied an impartial jury because he was not allowed to empanel a non-death qualified jury. But in the amended petition he argues he was denied an impartial jury because of the harmful and prejudicial evidence that his co-defendant's counsel introduced against him. The Court concludes that ground 5 does not relate back to a timely-filed claim, and therefore, it is dismissed as untimely.

Finally, in ground 10 McKnight claims he is actually innocent. (ECF No. 48 at 9.) He did not present this claim in his original petition.[9] Ground 10 does not relate back to a timely claim; the Court dismisses ground 10 as untimely.

### d. Petitioner withdraws grounds 1(b), (c), (d), (e), (f), (g) (h)

Next, McKnight acknowledges that these seven subparts of ground 1 do not relate to any timely-filed claims. (*See* ECF Nos. 6, 48, 75.) But he argues that he is entitled to equitable tolling of these claims due to the COVID-19 pandemic, beginning late December 2019. (ECF No. 75 at 20-21.) The Court need not delve into a discussion of equitable tolling, however, because McKnight's AEDPA limitations period expired well before December 2019. After his convictions were affirmed, 168 days elapsed before McKnight filed his first state postconviction petition. (*See* ECF No. 56-48 (Exh. 98); ECF No. 57-2 (Exh. 102).) Because the Court deems that petition timely, the AEDPA clock re-started the day after remittitur issued on October 25, 2017. (*See* ECF No. 57-20 (Exh. 120).) The AEDPA limitations period expired on May 10, 2018, more than a year and a half before the COVID pandemic began in about December 2019. Thus, McKnight's argument that he is entitled to equitable tolling due to the pandemic is unavailing. He alternatively states that he wishes to withdraw these claims. Accordingly, grounds 1(b), 1(c), 1(d), 1(e), 1(f), 1(g), and 1(h) are withdrawn.

### C. Exhaustion

Respondents next argue that the grounds that this Court has held relate back are unexhausted. (ECF No. 74 at 15-18.) A federal court will not grant a state prisoner's

---

[9]The Court further notes that McKnight did not argue on direct appeal that he was actually innocent. (ECF No. 56-35 (Exh. 85).)

petition for habeas relief until the prisoner has exhausted his available state remedies for all claims raised. *See Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b). A petitioner must give the state courts a fair opportunity to act on each of his claims before he presents those claims in a federal habeas petition. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995). A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings. *See Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey*, 653 F.2d 374, 376 (9th Cir. 1981).

### a.  Grounds 8 and 9 are exhausted

McKnight presented federal ground 8—the claim that the State engaged in prosecutorial misconduct by using information from a pending and unrelated murder as aggravating evidence during the penalty phase—on direct appeal. (*See* ECF No. 56-35 at 42-45 (Exh. 85); ECF No. 56-48 at 14-15 (Exh. 98).) This claim is exhausted. Ground 9 asserts cumulative error. (ECF No. 48 at 6, 8-9.) Ground 9 is exhausted as to any exhausted claims that remain before the Court.

### b.  Grounds 1(a), 1(i), 1(j), and 2 are unexhausted

These four grounds all assert ineffective assistance of trial or appellate counsel. McKnight did not present these claims to the state courts. (*See* ECF No. 56-35 (Exh. 85); ECF No. 56-48 (Exh. 98); ECF No. 57-2 (Exh. 102); ECF No. 57-10 (Exh. 110); ECF No. 57-17 (Exh. 117); ECF No. 57-22 (Exh. 122); ECF No. 57-30 (Exh. 130); ECF No. 57-32 (Exh. 132).) These grounds are all unexhausted.

### D. **McKnight Seeks a Stay**

Next, McKnight asks the Court to stay this case so that he may return to state court with his unexhausted claims. (ECF No. 75 at 34-36.) In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court placed limitations upon the discretion of the court to facilitate habeas petitioners' return to state court to exhaust claims. First, "stay and abeyance should be available only in limited circumstances." *Rhines*, 544 U.S. at 277. And the relief

is "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* Moreover, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278. The Ninth Circuit has held that the application of an "extraordinary circumstances" standard does not comport with the "good cause" standard prescribed by *Rhines. See Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005). The court may stay a petition containing both exhausted and unexhausted claims if: (1) the habeas petitioner has good cause; (2) the unexhausted claims are potentially meritorious; and (3) petitioner has not engaged in dilatory litigation tactics. *See Rhines*, 544 U.S. at 278; *see also Wooten v. Kirkland*, 540 F.3d 1019, 1023-24 (9th Cir. 2008).

Here, McKnight asks the Court to stay this action while he litigates a counseled state postconviction petition. (ECF No. 75 at 34-36.) He argues that he has good cause because he previously was without counsel in his state postconviction proceedings. *See Dixon v. Baker*, 847 F.3d 714, 721 (9th Cir. 2017). He contends that his claims alleging ineffective assistance of trial and appellate counsel related to his motion to suppress the eyewitness identification (grounds 1(a), 2), his claim that trial counsel failed to challenge aggravating evidence including the preliminary hearing transcripts from an unrelated murder case which was subsequently dismissed (ground 1(i)), and trial counsel's cumulative error (ground 1(j)) entitle him to habeas relief. He also insists that he is not engaging in dilatory tactics but seeks a stay in order to advance postconviction litigation.

Respondents oppose, arguing that granting a stay here contravenes AEDPA's goals of reducing delay and encouraging petitioners to follow state procedural rules. (ECF No. 77 at 21-23.) They also urge that granting a stay would incentivize petitioners to purposefully neglect to raise and/or develop the factual basis of their claims in accordance with state law, then return to state court when their claims are barred, and then improperly

benefit from de novo review in federal court. They argue that lack of counsel alone does not establish good cause and that McKnight fails to demonstrate his claims are not plainly meritless.

The Court concludes that a stay is warranted under these circumstances. The Ninth Circuit Court of Appeals has held that a petitioner can show good cause for a stay if he was without counsel in his state postconviction proceedings. *See Dixon*, 847 F.3d at 721. As a general matter, the Court is sympathetic to arguments that petitioners should not be incentivized to fail to raise and develop the factual basis of their claims in accordance with state law. But here McKnight clearly attempted to follow state procedural rules and sought counsel to help him file a state petition. He followed the explicit direction of his appellate counsel in attempting to file his first state postconviction petition. He appealed the denial of that petition, and filed a petition for rehearing, repeatedly pointing out that he had asked for counsel. The record simply does not suggest that McKnight intentionally failed to raise and develop the factual basis of his claims in state court. His claims are not plainly meritless. To be sure, McKnight faces an uphill battle in state court. But he is serving a sentence of life without parole, and he has never had an opportunity to pursue counseled state postconviction litigation. And of course, if McKnight obtains relief in state court his petition here would be rendered moot. Accordingly, the Court grants the motion for a stay and abeyance.

**IV.    CONCLUSION**

It is therefore ordered that Respondents' Motion to Dismiss (ECF No. 74) is granted in part and denied in part as follows:

grounds 5 and 10 are dismissed;

ground 3 is dismissed in part—the claim that the court did not permit defense counsel to further inquire into a prospective juror's potential racial bias is dismissed;

grounds 1(b), 1(c), 1(d), 1(e), 1(f), 1(g) and 1(h) are withdrawn;

grounds 8 and 9 are exhausted; and

grounds 1(a), 1(i), 1(j), and 2 are unexhausted.

It is further ordered that Petitioner is granted a stay and abeyance. This action is stayed pending final resolution of Petitioner's state postconviction proceedings.

It is further ordered that the grant of a stay is conditioned upon Petitioner returning to federal court with a motion to reopen the case within 45 days of the issuance of the remittitur by the state appellate court at the conclusion of the state-court proceedings.

It is further ordered that the Clerk of Court administratively close this action, until such time as the Court grants a motion to reopen the matter.

DATED THIS 6th Day of June 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE